Donald W. FLYNN, Donald Kevin Flynn, Gilbert Wayne Flynn, and Tracy Jannette Flynn McCormack, Plaintiffs,

v.

UNITED STATES of America, Defendant and Third–Party Plaintiff,

v.

Kenneth PARTRIDGE, Joyce Robertson, Estate of Helga Robertson, and Estate of Betty Daniels, Third–Party Defendants.

The ESTATE OF Helga ROBERTSON, Fourth–Party Plaintiffs,

v.

Amy Jo KAVENY, Glenn McFarland, and the Estate of Betty Daniels, Fourth–Party Defendants.

Civ. No. C–86–354W.

United States District Court, D. Utah, C.D.

March 4, 1988.

Paul W. Mortensen, Moab, Utah, Robert H. Wilde, Midvale, Utah, for plaintiffs.

Joseph W. Anderson, Asst. U.S. Atty., Salt Lake City, Utah, for U.S.

Gary B. Ferguson, Salt Lake City, Utah, for Estate of Helga Robertson.

Glenn C. Hanni, Joseph J. Joyce, Salt Lake City, Utah, for Estate of Betty Daniels.

Darwin C. Hansen, Bountiful, Utah, for Kenneth Partridge.

Amy Jo Kaveny, pro se.

Karen J. McClurg, Gregory J. Sanders, Salt Lake City, Utah, for Glenn McFarland.

## MEMORANDUM DECISION AND ORDER

WINDER, District Judge.

This matter is before the court on the Government's motion for summary judgment, plaintiff's motion for partial summary judgment, and third-party defendant Joyce Robertson's motion for summary judgment. On February 10, 1988, the court heard oral argument on these motions and the Estate of Betty Daniels' motion for summary judgment. Joseph W. Anderson appeared on behalf of the Government. Paul W. Mortensen appeared on behalf of the plaintiffs. Darwin C. Hansen appeared on behalf of Joyce Robertson. Glenn C. Hanni and Joseph J. Joyce appeared on behalf of the Estate of Betty Daniels. Also present at the hearing were Gary B. Ferguson and George T. Naegle, representing the Estate of Helga Robertson.

Prior to the hearing the court had carefully reviewed all memoranda, exhibits, and affidavits submitted with respect to these motions. At the hearing the court granted the Estate of Betty Daniels' motion for summary judgment and took the other motions under advisement. The plaintiffs waived oral argument on their motion for partial summary judgment and submitted their motion to the court on their pleadings and memoranda.

The court has made a thorough review of all materials in the file, including all depositions and affidavits. In addition, the court has carefully studied all statutes and case law pertinent to the issues presented to the court. Being now fully advised, this court grants the Government's motion for summary judgment and thereby denies plaintiffs' motion for partial summary judgment against the Government. Because the court hereby orders that the plaintiffs' action against the Government be dismissed with prejudice, the Government now has no claim for contribution against any of the third-party defendants. Consequently, this court need not address Joyce Robertson's motion for summary judgment as it pertains to the Government's third-party claims against her.

## UNDISPUTED FACTS

In the evening hours of March 13, 1985 at approximately 7:50 p.m., a car driven by Helga Robertson struck Betty Daniels while she was crossing an unlighted portion of Highway 191, south of Moab, Utah (hereinafter referred to as the "Daniels' accident"). Joyce Robertson was a passenger in Helga Robertson's vehicle. Helga and Joyce Robertson were traveling southbound on Highway 191, a four lane highway with a center, double yellow line and a broad shoulder. After striking Mrs. Daniels, the Robertson vehicle came to rest on the center double lines. Fearing that their car may be involved in another accident, Joyce insisted that Helga move the car to the side of the highway, which was done. Helga and Joyce then returned to the middle of the highway where Mrs. Daniels remained disabled. There, Joyce began to direct traffic around the accident scene.

Shortly thereafter, plaintiffs' decedent Joan Flynn, who was driving a van northbound on the highway, arrived at the Daniels' accident. After seeing Mrs. Daniels in the roadway, she stopped her vehicle near Mrs. Daniels in the outside lane and turned on the van's emergency flashers. Mrs. Flynn entered the roadway and went to the assistance of Mrs. Daniels, lying near the center line of the highway. After Mrs. Flynn arrived to render assistance, Joyce Robertson went to call for help at a nearby building.

Within minutes of this first accident, three National Park Service employees (the "NPS employees"), who were driving southbound in a National Park Service ("NPS") truck equipped with an overhead bar of emergency lights, came upon the scene of the accident. The NPS employees were traveling to an evening firearms training in Moab, Utah. The federal employees were outside the boundaries of the National Park System and were not within their jurisdiction of authority.[1] Robert E. Cornelius, the driver of the NPS truck, pulled the vehicle over to the shoulder and activated the emergency lights of the vehicle as it slowed to a stop. As Mr. Cornelius was turning on the emergency lights, he activated the vehicle's siren momentarily.[2]

Within three to five seconds[3] after the NPS vehicle stopped on the shoulder, a pickup truck driven by Kenneth Partridge swerved into Helga Robertson, Joan Flynn and Betty Daniels who were positioned in the middle of the highway (hereinafter referred to as the "Partridge accident"). Mr. Partridge was driving in a southbound lane at a speed of approximately 52 miles per hour in a 45 mile per hour zone. Mr. Partridge testified that he had been driving directly behind the NPS truck with two semi trucks following behind him.[4] Mr. Partridge stated that he swerved into the center of the highway and into the three women immediately after seeing the NPS truck's brake lights flash on.[5] Mr. Partridge stated that he was also distracted by the NPS vehicle's flashing, overhead emergency lights.[6] Because the Partridge truck drove into the women almost immediately after the NPS vehicle came to a complete stop, the NPS employees had not yet disembarked from their vehicle to render assistance or control traffic.

Although Mr. Partridge was distracted by the emergency lights of the NPS vehicle, several other significant factors impaired his ability to respond to the Daniels' accident in a reasonable manner. The Daniels' accident had occurred on an extremely dark night along an unlighted portion of Highway 191.[7] Mr. Partridge was driving his pickup at approximately 52 miles per hour and was legally intoxicated.[8] Consequently, Mr. Partridge failed to decrease the speed of his truck and approach the Daniels' accident scene with caution despite the fact that within his field of vision was the Flynn van's flashing emergency lights, the group of women in the middle of the highway, and the NPS vehicle's brake lights and flashing emergency lights. Tragically, because of his impaired response to the Daniels' accident, Mr. Partridge failed to apply his vehicle's brakes until after he drove into the group of three

---

1. Affidavit of Thomas McDonnell at paragraph 4.

2. The high-pitched siren sounded for a few seconds as the NPS vehicle was pulling over to the side of the highway.

3. It appears that no more than five seconds elapsed between the time the NPS driver activated the truck's emergency lights and the time Mr. Partridge's pickup truck drove into the three women. Deposition of Kenneth Partridge at pp. 21–22; Deposition of Bobby Cox at p. 16; Deposition of Douglas Crispin at p. 42; Deposition of Mark McCutcheon at p. 77–78; Deposition of Robert Cornelius at p. 60.

4. Deposition of Kenneth Partridge, pp. 20–22.

5. *Id.* at pp. 21–22.

6. *Id.* at p. 25.

7. Deposition of Robert Cornelius at p. 51.

8. Kenneth Partridge was determined to be legally intoxicated with a blood alcohol level of .10 after the accident. He subsequently entered a plea of no contest to charges of negligent homicide as a result of a plea bargain. Deposition of Kenneth Partridge at pp. 56–57.

women in the center of the highway.[9] After the Partridge collision, plaintiffs' decedent, Helga Robertson and Betty Daniels died.

## DISCUSSION

### A. *Standard on Summary Judgment Motions*

The standard this court must apply in ruling on summary judgment motions is contained in Rule 56 of the Federal Rules of Civil Procedure. Rule 56(c) reads in pertinent part:

> [A summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Pursuant to Rule 56(c) the granting of summary judgment is proper when there are no material factual issues to be determined by a jury and judgment in favor of the moving party is appropriate as a matter of law.

Rule 56(c) mandates the entry of summary judgment against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). However, if there is a dispute over a genuine issue of material fact regarding an essential element of the nonmoving party's claim, then summary judgment is not appropriate. A genuine material fact exists if a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). As to materiality, the substantive law will determine which facts are material. *Id.*

At the summary judgment stage, the trial judge's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *Anderson*, 106 S.Ct. at 2511. There is no such issue unless there is sufficient evidence in the record favoring the nonmoving party's claim. In essence, the inquiry is whether the evidence presents a genuine disagreement to require submission to a trier of fact or whether the evidence is so one-sided that the moving party must prevail as a matter of law. *Id.* at 2512.

The burden of showing that there is no "genuine issue of material fact" rests with the party seeking a summary judgment in its favor. Any doubt as to whether an issue of fact genuinely exists or whether that fact is material must be resolved in favor of the party opposing the summary judgment motion. *See generally*, 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure, § 2725 at 93–95 (1983). All evidence relied on in deciding a summary judgment motion must be viewed in the light most favorable to the party opposing the motion. Any facts asserted by the party opposing the motion must be regarded as true, and that party is given the benefit of all reasonable inferences that can be drawn from those facts.

### B. *Government's Motion for Summary Judgment*

The plaintiffs have brought this action pursuant to the Federal Tort Claims Act ("FTCA"). *See* 28 U.S.C. §§ 1346(b), 2671–80. The FTCA permits civil actions against the government on claims for personal injury or death caused by the negligent or wrongful act or omission of a government employee while acting within the scope of his employment. Recovery under the FTCA occurs only under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. 28 U.S.C. § 1346(b); *Ewell v. United States*, 776 F.2d 246, 249 (10th Cir.1985). Thus, wheth-

---

**9.** Deposition of Bobby Cox at p. 44; Deposition of Douglas Crispin at p. 43; Deposition of Robert Cornelius at p. 71.

er plaintiffs can prevail under the FTCA depends upon whether a private individual, in the place of the NPS employees, would be liable in the same circumstances under Utah law. *See United States v. Muniz,* 374 U.S. 150, 153, 83 S.Ct. 1850, 1852–53, 10 L.Ed.2d 805 (1963).

### 1. The NPS Employees Owed No Duty to Mrs. Flynn

The initial step in analyzing plaintiffs' claim of negligence under the FTCA against the Government is whether the NPS employees owed a duty of care toward Mrs. Flynn. If no duty existed, there can be no actionable negligence and resulting liability. Under Utah law, a person does not have an affirmative duty to rescue or protect another unless the law imposes such a duty. Generally, a duty of reasonable care arises when a special relationship arises or exists between the parties. *Beach v. University of Utah,* 726 P.2d 413, 415 (Utah 1986).

#### a. *No Statutory Duty Existed*

■ Plaintiffs have failed to point to any state or federal statute that effectively imposed a duty of reasonable care upon the NPS employees toward Mrs. Flynn. In order for a claim of negligence to prevail against the NPS employees, the federal employees must have had a duty to protect Mrs. Flynn, a public citizen.

Plaintiffs claim that provisions of 16 U.S.C. § 1a–6(a), regulating law enforce-ment personnel within the National Park System, form a basis for a duty owed to Mrs. Flynn.[10] This statute provides that certain officers or employees of the Department of Interior shall maintain law and order and protect persons and property within areas of the National Park System. 16 U.S.C. § 1a–6(a). It is clear from the statute that the NPS employees owe a duty to protect persons and property only within the National Park System. Because the NPS employees were outside the boundaries of a national park at the time of the Daniels' accident, they owed no statutory duty of care toward Mrs. Flynn.

Nevertheless, the NPS employees would have a statutory duty to protect the public if they were subject to a law enforcement cooperative agreement with the State of Utah or local county authority. Such an agreement would extend the NPS employees' jurisdiction beyond national park boundaries. However, the plaintiffs have not brought such an agreement to the attention of the court. Moreover, it appears that a cooperative agreement between the state and federal government, concerning the vicinity of Moab, did not exist at the time of the two accidents.[11]

#### b. *No Special Relationship Existed*

■ An alternative basis showing that the NPS employees owed a duty of care toward Mrs. Flynn arises if a special relationship existed between the parties. The

---

**10.** Section 1a–6(a) reads in its entirety:

(a) *Designation authority of Secretary; powers and duties of designees*

In addition to any other authority conferred by law, the Secretary of the Interior is authorized to designate, pursuant to standards prescribed in regulations by the Secretary, certain officers or employees of the Department of the Interior who shall maintain law and order and protect persons and property within areas of the National Park System. In the performance of such duties, the officers or employees, so designated, may—

(1) carry firearms and make arrests without warrant for any offense against the United States committed in his presence, or for any felony cognizable under the laws of the United States if he has reasonable grounds to believe that the person to be arrested has committed or is committing such felony, provided such arrests occur within that system or

the person to be arrested is fleeing therefrom to avoid arrest;

(2) execute any warrant or other process issued by a court or officer of competent jurisdiction for the enforcement of the provisions of any Federal law or regulation issued pursuant to law arising out of an offense committed in that system or, where the person subject to the warrant or process is in that system, in connection with any Federal offense; and

(3) conduct investigations of offenses against the United States committed in that system in the absence of investigation thereof by any other Federal law enforcement agency having investigative jurisdiction over the offense committed or with the concurrence of such other agency.

**11.** Deposition of Mark McCutcheon at pp. 80–81.

plaintiffs argue that all law enforcement personnel have an inherent duty to render competent emergency aid and assistance to the public. This argument imposes a duty of reasonable care on law enforcement personnel regardless of the circumstances, including whether the officer is off-duty or not within his jurisdictional authority. Although the imposition of such an expansive duty of care would benefit the public, case law and state statutes have not expanded a law enforcement officer's duty that broadly.

The plaintiffs rely on a case wherein the Alaska Supreme Court found that an on-duty state trooper had a duty to exercise reasonable care in rendering assistance to a twelve-year old girl who had been attacked by a lion in a zoo. *Lee v. State*, 490 P.2d 1206 (Alaska 1971). The state trooper's duty of reasonable care arose from his customary obligation as a police officer to protect the lives and welfare of the citizens when dispatched to their assistance. The court observed that the state trooper's traditional role included a duty to rescue. *Id.* at 1209–10.

This court believes that the facts of *Lee v. State* can be distinguished from the present case. In contrast to *Lee v. State*, the NPS employees were off-duty park rangers outside their jurisdiction and were not dispatched to the Daniels' accident. Although law enforcement officers may have a traditional duty to exercise reasonable care within their area of jurisdiction, the NPS employees had no general duty to protect the public outside the National Park System. The customary role of a park ranger does not involve an official or legal duty to stop and render aid at an accident which occurs outside the boundaries of a national park.

 As a matter of law, the NPS employees were acting as private citizens when they happened upon the Daniels' accident. As private citizens, the NPS employees had no affirmative pre-existing duty to stop and render aid. This court holds that there is no genuine issue of material fact concerning whether the NPS employees had a pre-existing duty of due care toward Mrs. Flynn. However, when the NPS employees chose to render aid, the law imposed a duty of care upon them as defined by Utah's Good Samaritan Act.[12]

### 2. Utah's Good Samaritan Act Exonerates the NPS Employees [13]

At common law, there is no affirmative duty to rescue. "[T]he law has persistently refused to recognize a moral obligation of common decency and common humanity to come to the aid of another human being who is in danger." [14] However, the common law recognizes that once a person chooses to rescue another, he is held to a duty of due care.[15] Professor Prosser has observed that the result of the common law rules is that "the good Samaritan who tries to help may find himself mulcted in damages, while the priest and the Levite who pass by on the other side go on their cheerful way rejoicing." [16]

Good Samaritan laws have been enacted by all fifty states and the District of Columbia in response to this peculiarity in tort law that discourages individuals from rendering assistance in emergencies.[17] In an effort to encourage humanitarian acts,

**12.** Utah Code Ann. § 78–11–22 (Supp.1983).

**13.** The plaintiffs argue that it was a procedural error for the defendants to not plead the Good Samaritan Act as an affirmative defense. Rule 8(c) of the Federal Rules of Civil Procedure does not specifically require that such a statute be affirmatively pled. More importantly, the relevancy of this defense was not apparent until after discovery and the failure of the defendants to affirmatively plead this defense has not prejudiced the plaintiffs.

**14.** W. Prosser, Law of Torts § 56, at 340 (4th ed. 1971).

**15.** Restatement (Second) of Torts § 324 (1965). No Utah case has expressly adopted this assumption of duty rule. However, the likelihood of adoption of the assumption of duty rule was expressly affirmed in *Barnson v. United States*, 531 F.Supp. 614, 621 (D.Utah 1982).

**16.** W. Prosser, Law of Torts § 56, at 344 (4th ed. 1971).

**17.** Utah Legislative Survey, 1984 Utah Law Rev. 217, 218 (1984).

Good Samaritan statutes typically extend limited immunity from civil liability to all persons who render assistance at the scene of an emergency.

Utah has several Good Samaritan laws that encourage individuals to render emergency assistance. Utah extends complete immunity from civil liability to persons with specialized medical training, including doctors, nurses, and dentists.[18] However, liability for acts or omissions due to gross negligence or willful misconduct is not exonerated.[19]

■ For lay persons, the 1983 Utah Legislature enacted a Good Samaritan Act that extends limited immunity from civil liability to all persons who render emergency care at or near the scene of an emergency.[20] The Act, as it read at the time of the Daniels' accident, provided as follows:

A person who renders emergency care at or near the scene of an emergency, gratuitously and in good faith, is not liable for any civil damages as a result of any act or omission by the person rendering the emergency care, unless the person is grossly negligent. As used in this section, "emergency" means an unexpected occurrence involving injury, threat of injury, or illness to a person, including motor vehicle accidents, disasters, and other accidents or events of a similar nature.[21]

Utah's Good Samaritan Act provides limited immunity from civil liability to the NPS employees. The NPS employees stopped to render aid at the scene of the Daniels' accident—an emergency as de-

fined by § 78–11–22. Further, the circumstances show that they stopped to render assistance in good faith and gratuitously.[22] Because the Partridge collision occurred only seconds after the NPS vehicle stopped, the NPS employees were exposed to civil liability for a very brief period of time. The NPS employees are liable for any grossly negligent act or omission occurring between the time Mr. Cornelius, the NPS driver, saw the Daniels' emergency and decided to render assistance and the time Mr. Partridge collided into the three women, thereby causing a second emergency. Indeed, the period of time in which the Government was exposed to civil liability from the plaintiffs' claims was less than one minute.[23]

During this period of time, Mr. Cornelius initially spotted shapes in the center of the highway approximately 50 feet ahead of his vehicle. He then slowed the NPS truck from a speed of approximately 35 miles per hour to a speed between 10 to 20 miles per hour and passed the group of women on the outside southbound lane.[24] After determining that an emergency existed, Mr. Cornelius activated the vehicle's emergency lights and pulled his vehicle onto the wide shoulder approximately 20–30 feet past the accident scene.[25] Because the Partridge pickup drove into the group of women just seconds later, the NPS employees had not yet left their vehicle to begin controlling traffic or administering medical aid at the Daniels' accident.[26]

Plaintiffs first argue that the Good Samaritan Act should not be applied to pro-

18. *See* Utah Code Ann. § 58–12–23 (1953); § 58–7–10 (Supp.1985) and § 26–8–11 (Supp. 1985).

19. *See* Utah Code Ann. § 26–8–11 (Supp.1985). The statutes also include a good faith requirement that would allow courts to require some degree of care.

20. Utah Code Ann. § 78–11–22 (Supp.1983).

21. The Good Samaritan Act was amended in 1987. Along with making minor changes, the legislature added a definition of "emergency care" as including "actual assistance or advice offered to avoid, mitigate, or attempt to mitigate the effects of an emergency."

22. The term "gratuitously" has been construed to mean "without expecting compensation." *Lee v. State*, 490 P.2d at 1206.

23. *See,* Deposition of Douglas F. Crispin at pp. 34–35; Deposition of Mark C. McCutcheon at pp. 41–43; Deposition of Kenneth Partridge at pp. 21–22.

24. Deposition of Robert Cornelius at pp. 52, 68.

25. *Id.* at pp. 51–55.

26. After the Partridge accident, the NPS employees left their vehicle to render medical assistance to the victims and to steer traffic away from the second accident site. *Id.* at pp. 60–61.

tect the NPS employees because they caused the second accident. After a careful reading of Utah Code Ann. § 78–11–22 (Supp.1983), this court believes that this argument is without foundation. The Good Samaritan Act serves to exonerate any negligent conduct by any person who stops to render aid at the scene of an emergency. Arguably, this statute does not apply if the actor causes the emergency.[27] The facts clearly show that the NPS employees did not cause the Daniels' accident but, instead, stopped to render aid at the accident scene. Under this statute, any negligent acts or omissions by the NPS employees in stopping to render emergency care at the Daniels' accident, including the employee's alleged failure to block the scene and negligent activation of the siren, are not subject to civil liability.

■ In addition, plaintiffs argue that the NPS employees were grossly negligent in responding to the Daniels' emergency and, thus, the Government cannot be protected from civil liability by the Good Samaritan Act. In support, plaintiffs claim that Mr. Cornelius was grossly negligent in failing to position his vehicle in front of the Daniels' accident site and thereby block and secure the women against on-coming southbound traffic. Further, plaintiffs argue that Mr. Cornelius was grossly negligent in parking his vehicle on the shoulder of the highway and activating the high-pitched siren and emergency lights, thus distracting on-coming traffic and preventing the women from keeping a proper lookout.[28]

Gross negligence in the context of Good Samaritan legislation has been defined as "reckless, willful or wanton conduct." *Lee v. State*, 490 P.2d at 1208. The Utah Supreme Court has defined gross negligence in other contexts as a "failure to observe even slight care" and as a "carelessness or recklessness to a degree that shows utter indifference to the consequences that result." *Atkin Weight and Miles v. Mountain States Telephone*, 709 P.2d 330, 335 (Utah 1985).

The Government's civil liability to the plaintiffs is to be judged in the context of the emergency existing at the time. Under the circumstances of this case, this court cannot find any evidence in the record of grossly negligent conduct on the part of the NPS employees. Consequently, no genuine issues of material fact exist that would support a verdict in favor of the plaintiffs on the issue of the Government's gross negligence. As a matter of law, summary judgment is appropriate to dismiss the plaintiffs' claims of negligence by the NPS employees under the FTCA.

3. The Discretionary Function Exception to the FTCA Bars Claims Relating to NPS Supervisory Personnel

■ As an alternative claim under the FTCA, plaintiffs assert that the NPS supervisors who were responsible for training the NPS employees were negligent in entrusting a law enforcement vehicle to them and in failing to train them regarding certain emergency procedures. In particular, the plaintiffs allege that the NPS supervisors failed to train the NPS employees to follow the regulations set forth in NPS-9 of the National Park Service's policy manual.

The Government's liability under the FTCA is limited, however, by 28 U.S.C. § 2680 which enumerates exceptions to the waiver of sovereign immunity contained in the FTCA. Specifically, under section 2680(a), the Government is immune from claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the federal agency or an em-

---

27. The 1987 Utah Legislature made it clear in its amendments to the Good Samaritan Act that the Act does not apply to persons who cause the emergency. If the NPS employees had, in fact, caused the second accident, the Good Samaritan Act would not serve to exonerate any negligent conduct put forth in assisting the victims of the second accident.

28. The plaintiffs also claim that the emergency warning devices were improperly installed. Because the NPS employees activated the lights and siren, this court decides that this incidental allegation is not material to the plaintiffs' negligence claims.

ployee of the Government." 28 U.S.C. § 2680(a). This exception is commonly referred to as the "discretionary function" exception.

This exception applies when a government employee, in performing his statutory duties, acts without relying upon a "fixed or readily ascertainable standard" or, in other words, acts by using his judgment or discretion. Conversely, if there is a standard by which his action is measured, the discretionary function exception does not apply. *See Weiss v. United States*, 787 F.2d 518, 523 (10th Cir.1986); *Barton v. United States*, 609 F.2d 977, 979 (10th Cir. 1979). If an act is not made mandatory or clearly specified in a rule or regulation, then the act is discretionary. *Weiss*, 787 F.2d at 523.

Plaintiffs claim that the NPS–9 provides the necessary "fixed" standard to which the NPS employees were not trained to follow. The pertinent version of the NPS–9 was the version released April, 1984. Chapter 18 of the NPS–9, dated April, 1984, is entitled "Use of Emergency Vehicles" and provides these pertinent guidelines:

Operation of an emergency vehicle with emergency devices activated occur:

1. *At such times, when in the reasonable belief of the operator, an emergency is imminent or exists and the activation of emergency warning devices is necessary in order to protect life or render assistance;*

2. When directed by a dispatcher or a supervisor;

3. To effect the arrest or prevent the escape of a fleeing law violator after other reasonable means have failed;

4. When necessary to effect a traffic stop;

5. When necessary while providing escort services;

6. *When necessary while responding to the scene of a fire, accident or other emergency. Emergency lights shall remain activated at the scene of such incidents when necessary to protect*

*against further injury or property damage.*

(emphasis added).

Under the NPS–9 guidelines regarding emergency procedures, there is not a "fixed or readily ascertainable standard" that requires NPS employees to position their vehicles in any particular way at the scene of the accident. Moreover, the April, 1984 NPS–9 does not require that an emergency vehicle be operated by a sufficiently trained park ranger or have properly installed emergency equipment. In an emergency, the NPS–9 gives a NPS employee considerable latitude in using his own judgment regarding the need for activating emergency warning devices.

Thus, the April, 1984 NPS–9 contains no "fixed or readily ascertainable standard" regarding either the operation of emergency warning devices or the positioning of an emergency vehicle at the scene of an accident. Therefore, the record contains no evidence showing that the NPS supervisors failed to train the NPS employees to follow a previously adopted safety policy or a "fixed and readily ascertainable standard" of conduct. This court holds that there is no genuine issue of material fact regarding the plaintiffs' claim of negligent supervision and that 28 U.S.C. § 2680(a) bars plaintiffs' claim as a matter of law.

C. *Joyce Robertson's Motion for Summary Judgment*

█ The plaintiffs assert only one colorable claim against Joyce Robertson. That claim concerns whether Joyce Robertson was negligent in instructing Helga Robertson to move her car over to the side of the road after the Daniels' accident and, thus, failing to protect the accident scene with the car or with emergency flashers. All other allegations the plaintiffs raise concerning Joyce Robertson's negligent control of the car are not relevant to any duty she owed to Mrs. Flynn.[29]

When Joyce chose to render assistance at the Daniels' accident, the law imposed upon

---

**29.** *See Hale v. Allstate Ins. Co.,* 639 P.2d 203, 205 (Utah 1981) (holding that a passenger involved in an automobile accident owes no duty to the driver or any third-parties).

her a duty to exercise reasonable care.[30] However, Utah's Good Samaritan Act provides Joyce Robertson with immunity from civil liability in regard to any negligent acts or omissions by her while she provided emergency care at the accident scene.[31] Nevertheless, the Good Samaritan Act provides no civil immunity for acts or omissions reaching the level of gross negligence.

After a careful review of the facts in a light most favorable to the plaintiffs' claims, this court cannot find any evidence in the record which would support a finding of gross negligence on the part of Joyce Robertson after the Daniels' accident occurred. None of Joyce Robertson's acts, which included instructing Helga to move the car to the side of the road, could be found to rise to a level of gross negligence. Accordingly, this court decides that there is no genuine issue of material fact regarding the liability of Joyce Robertson to the plaintiffs and summary judgment in Joyce Robertson's favor is appropriate as a matter of law.

## CONCLUSION

The undisputed facts of this tragic case show that the Government owed no legal duty of care toward Mrs. Flynn, the decedent. The record fails to show a pre-existing duty owed to Mrs. Flynn by the NPS employees either imposed by statute or because of a special relationship between the parties. Further, when the NPS employees chose to render assistance at the scene of the Daniels' accident, no genuine material facts infer any gross negligence on the part of the NPS employees. Thus, the Good Samaritan Act provides civil immunity to these private actions. In addition, the discretionary function exception to the FTCA bars any negligence claims the plaintiffs allege against NPS supervisors. Accordingly, in view of the lack of any genuine issues of material fact and the Government's entitlement to a judgment as a matter of law, summary judgment in favor of

the government is appropriate under these circumstances.

In regard to Joyce Robertson's motion for summary judgment against the plaintiffs, this court holds that there are no genuine issues of material fact regarding Joyce Robertson's liability to the plaintiffs. Summary judgment is also warranted by the civil immunity given Joyce Robertson pursuant to Utah's Good Samaritan Act.

Additionally, in consideration of the holdings contained in this decision, plaintiffs' motion for partial summary judgment against the Government is denied.

Accordingly,

IT IS HEREBY ORDERED that the Government's motion for summary judgment is granted and plaintiffs' motion for partial summary judgment against the Government is denied. Joyce Robertson's motion for summary judgment against the plaintiffs is hereby granted. In view of this decision, Joyce Robertson's motion for summary judgment against the Government need not be addressed. Plaintiffs' action against the Government and Joyce Robertson shall be dismissed with prejudice.

---

**30.** Any rescuer has an affirmative duty to exercise reasonable care under the assumption of duty rule. *See supra* footnote 15.

**31.** Utah Code Ann. § 78–11–22 (Supp.1983).