Elizabeth Llewellyn **LEE**, a minor, by and through her next friend, Sallie Newman **Lee**, natural mother,

v.

**STATE** of Alaska and **Frank Johnson**, State Trooper, Appellees.

No. 1395.

Supreme Court of Alaska.

Nov. 30, 1971.

Ernest Z. Rehbock and J. L. McCarrey, Jr., Anchorage, for appellant.

George N. Hayes and Daniel A. Moore, Jr., of Delaney, Wiles, Moore, Hayes & Reitman, Anchorage, for appellees.

Before BONEY, C. J., and DIMOND, RABINOWITZ and CONNOR, JJ.

## OPINION

BONEY, Chief Justice.

The plaintiff-appellant appeals from a judgment for the defendants-appellees.

On August 19, 1967, the plaintiff, then a child of twelve, and a thirteen year old friend attended an amusement park in Anchorage, Alaska. They stopped to pet a lioness kept in a cage by the operator of the amusement concession, Alaska Amusements, Inc. The beast thereupon grabbed the plaintiff's arm in its teeth and held her to the bars of the cage. The plaintiff's companion tried unsuccessfully to secure her release by beating the lioness over the head with a pipe, and then ran to a nearby State Trooper office for help. Defendant Johnson, an Alaska State Trooper, was thus brought to the scene. Johnson placed his arm around the plaintiff, cocked his gun, and shot the lioness in the head. He then cocked his gun again in preparation for a second shot. However, his first shot had found its mark. The lioness dropped dead releasing the plaintiff's arm. Apparently recoiling from this release, the plaintiff and Officer Johnson fell to the ground. His gun went off wounding the plaintiff in her right thigh.

On July 10, 1968, the plaintiff filed suit against Alaska Amusements, Inc., Officer Johnson, and the State of Alaska. The case was tried by a jury, which served in only an advisory capacity as to the state.[1] The plaintiff was granted a jury verdict against Alaska Amusements, Inc., and a judgment has been entered for $15,000. No appeal has been taken from that judgment and according to counsel for the plaintiff, it has been satisfied. The jury returned a verdict for Officer Johnson and the state. Judgment thereon was entered for Officer Johnson. The court adopted the jury verdict for the state and accordingly entered judgment against the plaintiff.

The central issue in this appeal is whether, as the trial court ruled, the Alaska Good Samaritan Statute, AS 09.65.090, shields the defendants from liability for ordinary negligence. The plaintiff argues that the court below improperly applied that statute by instructing the jury that:

AS 09.65.090 reads as follows:

(a) A person who, without expecting compensation, renders care to an injured or sick person, who appears to be in immediate need of aid is not liable for civil damages as a result of an act or omission in rendering emergency care, or as a result of an act or failure to act to provide or arrange for further medical treatment or care for the injured person.

(b) This section shall not preclude liability for civil damages as a result of gross negligence or intentional misconduct. Gross negligence means reckless, wilful, or wanton misconduct.

Unless you find that Frank Johnson acted in a grossly negligent manner as the statute defines "gross negligence" in the rescue efforts he made to extricate Elizabeth Lee, or unless you find that he intentionally shot her, you must find for Frank Johnson and against the plaintiffs.

■ At common law there is no duty to rescue. "[T]he law has persistently refused to recognize the moral obligation of common decency and common . humanity, to come to the aid of another human being who is in danger * * *."[2] Only in certain limited situations, as for example where the actor was responsible for placing the imperiled person in his endangered position, has a duty been recognized.[3] However, once rescue operations have begun, the rescuer is held to a duty of due care.[4] Professor Prosser has pointed out that "[t]he result of all this is that the good Samaritan who tries to help may find him-

---

1. AS 09.50.290 requires that tort claims against the state be tried by the court without a jury.

2. W. Prosser, Law of Torts § 56, at 340 (4th ed. 1971).

3. *Id.* 341–343.

4. Restatement (Second) of Torts § 323 (1965) ; W. Prosser, Law of Torts § 56, at 343 (4th ed. 1971).

self mulcted in damages, while the priest and the Levite who pass by on the other side go on their cheerful way rejoicing." [5] AS 09.65.090 and similar statutes in some forty-two states and the District of Columbia are in response to this problem. [6] Their purpose is to induce voluntary rescue by removing the fear of potential liability which acts as an impediment to such rescue. Thus they are directed at persons who are not under some pre-existing duty to rescue. [7]

We feel, therefore, that the applicability of AS 09.65.090 to Officer Johnson depends upon whether or not he was under a duty to rescue the plaintiff. If he was, then he was not a member of that group of persons to whom the statute is directed and he should be denied its protection. No case has been found which considers the applicability of a Good Samaritan Act to a policeman. [8]

In discussing whether or not Officer Johnson had a duty to assist the plaintiff, both parties have directed our attention to provisions of Alaska law. The plaintiff notes that state troopers are employees of the Department of Public Safety and then cites AS 44.41.020:

> The Department of Public Safety shall administer functions relative to the protection of life and property.

The defendants argue that the duties of police officers are statutory, and then refer to AS 18.65.080:

> The Department of Public Safety and each member of the state troopers is charged with the enforcement of all criminal laws of the state, and has the power of a peace officer of the state or a municipality and those powers usu-

ally and customarily exercised by peace officers. Each member of the state troopers may prevent crime, pursue and apprehend offenders, obtain legal evidence, institute criminal proceedings, execute any lawful warrant or order of arrest, make an arrest without warrant for a violation of law committed in his presence, and may cooperate with other law enforcement agencies in detecting crime, apprehending criminals, and preserving law and order in the state.

The defendants also cite AS 18.65.110:

> Members of the state troopers may not interfere with the rights or property of any person except in a lawful manner necessary for the prevention of crime or the capture and arrest of an offender.

The plaintiff seeks to have this court read AS 44.41.020 to indicate that the duties of the police are extremely broad—and thereby encompass actions such as those of Officer Johnson. The defendants see the statutes they cite as precise delineations of and limitations on the powers and duties of the police. We fell that a holding that police officers have no duty to rescue would not comport with public conceptions of their role. In Wood v. Morris [9] the court felt that the applicability of the Georgia Guest Statute turned, in part, on whether the policeman transporting an injured girl in his car had an obligation to care for her. The court said:

> Whether or not the defendant policeman had any statutory obligation to care for the plaintiff, we think that there was an obligation in fact arising out of the customary role played by police officers in such emergencies, pursuant to

---

5. W. Prosser, Law of Torts § 56, at 344 (4th ed. 1971).

6. The Good Samaritan Statutes have not gone uncriticized. Note, Good Samaritans and Liability for Medical Malpractice, 64 Colum.L.Rev. 1301 (1964) ; Note, California Good Samaritan Legislation: Exemptions from Civil Liability While Rendering Emergency Medical Aid, 51 Calif.L.Rev. 816 (1963).

7. A rescuer under a pre-existing duty to rescue would not need the added inducement of immunity from civil liability for his ordinary negligence.

8. The two-page discussion in Annot., 39 A.L.R.3d 222 (1971), is indicative of the dearth of material on the subject of "Construction of 'Good Samaritan' Statute Excusing from Civil Liability One Rendering Care in Emergency."

9. 109 Ga.App. 148, 135 S.E.2d 484 (1964).

their general responsibility of protecting the lives and welfare of citizens at large.[10]

We agree. We hold that Officer Johnson was under a duty to go to the aid of the plaintiff. Therefore, we conclude that it was error for the trial court to apply the Alaska Good Samaritan Statute. The jury should have been instructed to return a verdict for the plaintiff and against the defendants [11] if they found Officer Johnson to be *ordinarily* negligent. As this question has not been presented to a jury, the case should properly be remanded for a new trial.

■ The defendants offer two arguments against a remand for a new trial. The defendants contend first that there is insufficient evidence for a jury to find that Officer Johnson was ordinarily negligent. The jury considered only whether he had been grossly negligent. Whether Officer Johnson acted reasonably is a jury question.[12] A young girl was shot by a rescuer who was an expert marksman; it is apparent that there is sufficient evidence for a jury to find that he had been ordinarily negligent.

The defendants also contend that this case is moot. They argue that the plaintiff, by virtue of her judgment against Alaska Amusements, has been compensated for her gunshot wound. The defendants maintain that an additional award for ordinary negligence aginst them on remand would result in a double recovery. The argument relies primarily on Instruction 21 which reads as follows:

If you find that Alaska Amusements, Inc. was negligent toward the plaintiff, Elizabeth Lee, and that its negligence was the proximate cause of her having been bitten by the lion, any further injuries suffered by her as a result of the gunshot wound are also part and parcel of the original negligence of Alaska Amusements, Inc., provided you find that Alaska Amusements, Inc.'s negligence placed Elizabeth Lee in a position of peril that included possible danger to her attendant upon a rescue operation. It is not necessary that Alaska Amusements, Inc., could foresee the exact nature and kind of further danger that might occur during a recue operation. It is only necessary that reasonable men, in the position of Alaska Amusements, Inc., could foresee the possibility of danger to another during any rescue operation that might come about as the result of the method and manner of keeping the lion.

We agree with the defendants that, to the extent the plaintiff has already been compensated for certain of her injuries, she should not, on remand, be allowed a second recovery for those injuries.[13] Under Instruction 21 the damages awarded by the jury could have included compensation for the gunshot wound.[14] However, it does not follow that the case is mooted and a remand precluded. At the very least, costs and attorney's fees to the prevailing party or parties are in issue between the plaintiff and these defendants.[15]

---

10. 135 S.E.2d at 487.

11. The state's liability if Officer Johnson is held liable, seems to have been conceded. No argument on the issue has been offered; the liability would flow from the doctrine of respondeat superior.

12. *Cf.* Mallonee v. Finch, 413 P.2d 159, 161 (Alaska 1966); Crawford v. Rogers, 406 P.2d 189, 194 (Alaska 1965); McCoy v. Alaska Brick Co., 389 P.2d 1009–1010 (Alaska 1964).

13. *See, e. g.,* Laurenzi v. Vranizan, 25 Cal. 2d 806, 155 P.2d 633, 637 (1945); W.

Prosser, Law of Torts § 48, at 300 (4th ed. 1971):
> When payment of the judgment in full is made by the judgment debtor, there is no doubt that the plaintiff is barred from a further action against another who is liable for the same damages, or from enforcement of another judgment against him. (Footnotes omitted)

14. The gunshot wound was the only injury the plaintiff suffered from Officer Johnson upon which she has sued.

15. Pursuant to Alaska R.Civ.P. 82(a), the trial court attorneys' fees and costs

■ The plaintiff suffered two distinct sets of injuries: those relating to the bite of the lioness and those caused by the errant gunshot. Under Instruction 21 the jury could have awarded damages against Alaska Amusements, Inc., for both sets of injuries. On remand, if the defendants are held liable and damages are awarded against them, then they should be entitled to a credit for that portion of the $15,000.00 paid by Alaska Amusements, Inc., which related to the gunshot wound.[16] They are not entitled, however, to a credit for that portion relating to the bite.

The damages awarded against Alaska Amusements, Inc., were not apportioned by the jury. A lump sum award was returned in accordance with Instruction 25, in which, in relevant part, the judge instructed the jury that:

If you should find for the plaintiff on the question of liability you will then determine as to the amount she is entitled to recover from the evidence and under these instructions. If you find against only one defendant then that amount will be entered in the verdict form prepared for the plaintiff and against that defendant. If you find in favor of plaintiff as against both defendants [Alaska Amusements, Inc., and Officer Johnson] then you should divide the total amount of damages between the two defendants as you may determine proper from the evidence in this case. Enter the amount so determined as to each defendant on the appropriate verdict.[17]

■ One easy solution to this difficult problem would be to hold that either the plaintiff or the defendants have waived their right to the benefits of apportionment by their failure to request special interrogatories requiring the jury to apportion the damages awarded against Alaska Amusements, Inc.[18] Such a holding would be unwarranted. To impose the burden of requesting special interrogatories on either party because that party could thereby benefit by protecting its rights would be to hold that the burdened party, but not the other party, should have foreseen the present difficulty. There is no reason to distinguish between the parties in this regard.

Another easy solution would be to assume that the full amount awarded against Alaska Amusements, Inc., was compensation either for the bite alone or for the gunshot wound alone. But we cannot assume that the jury awarded no damages for the bite of the lioness since the primary negligence of Alaska Amusements, Inc., was in the keeping of the beast. Instruction 21 precludes the contrary assumption that the full $15,000.00 was awarded as compensation for the bite.

■ Therefore, an apportionment of the damages awarded against Alaska Amusements, Inc., is necessary.[19] The ap-

---

against the plaintiff in the amount of $2,620.60, $1,310.30 to each of these two defendants.

16. *Cf.* W. Prosser, Law of Torts § 48 at 300 (4th ed. 1971):
    "[E]ven a partial satisfaction of one judgment will not prevent obtaining or enforcing another, although it is everywhere agreed that the amount received must be credited pro tanto against the amount to be collected. (Footnote omitted)

17. The jury could determine damages only as to Alaska Amusements, Inc., and Officer Johnson. The state's liability and damages against the state were to be determined by the judge. AS 09.50.290.

18. Alaska Amusements, Inc., was the only defendant potentially liable for both sets of injuries.

19. The situation is analogous to a release in which the plaintiff covenants with one joint tort feasor not to sue. By accepting payment from Alaska Amusements, Inc., of a judgment which could have included compensation for the gunshot wound, the plaintiff has released Alaska Amusements, Inc., from any further liability. But acceptance of that payment does not necessarily indicate that the plaintiff has been fully compensated for the gunshot wound. Full compensation amounts to satisfaction and should be carefully distinguished from a release.

portionment must be made, on remand, on evidence presented to the trial court.[20] In apportioning those damages, the trial court will not be asked to determine what transpired in the jury room at the first trial. Rather, the plaintiff will have to prove, by a preponderance of the evidence, to what extent the damages awarded against Alaska Amusements, Inc., were compensation for the bite. If the plaintiff establishes that the bite-related damages should have been $15,000.00 or more, then the defendants will receive no credit; but if the plaintiff can only establish that the bite-related damages were of an amount less than $15,000.00, then the difference between that amount and $15,000.00 will be credited against any damages awarded against the defendants.[21] The burden of proving an apportionment falls upon the plaintiff because, unless she can demonstrate to the contrary, her judgment is presumed to constitute full compensation.[22]

On remand, then, the procedure will be as follows. A new trial will be required as to both liability and damages. The jury will determine Officer Johnson's liability; the judge will determine the state's liability. If the defendants are found liable, then the jury will assess damages against Officer Johnson and the judge will have to make an independent finding as to damages against the state. The judge will also have to determine what portion, if any, of the $15,000.00 awarded against Alaska Amusements, Inc., will be allowed as a credit against those damages. In like manner, the jury will determine what portion, if any, of that $15,000.00 will be allowed as a credit against the damages awarded against Officer Johnson. In this way, there can be no double recovery by the plaintiff for her injuries.

We conclude that the case is not moot and that a remand for a new trial is appropriate.

The judgment is reversed and the case is remanded for a new trial.

ERWIN, J., not participating.

---

The two factors properly used to distinguish a release from a satisfaction are the intent of the parties and the extent of compensation. 1 F. Harper & F. James, The Law of Torts § 10.01, at 711–12 (1956). Here their intent is nonoperative in that the "release" was by way of judgment, not contract; and the extent of compensation is what is to be determined on remand when the award against Alaska Amusements will be apportioned. *Cf.* Aldridge v. Morris, 337 Ill.App. 369, 86 N.E.2d 143, 146–49 (Ill.App.1949); Laurenzi v. Vranizan, 25 Cal.2d 806, 155 P. 2d 633, 637 (1945).

20. As to the state, the apportionment will have to be made by the judge. AS 09.-50.290. As to Officer Johnson, unless he and the plaintiff agree that the judge may apportion the damages and thereby determine the extent of the credit, his demand for a jury trial will still be in effect and the issue of apportionment will have to be put before the jury on remand. See Alaska Constitution Art. I § 16; Alaska R.Civ.P. 38.

21. Thus, for example, if it is determined that $10,000.00 of the $15,000.00 related to the bite, then a $5,000.00 credit will be allowed against any damages awarded against these defendants.

22. To continue the analogy discussed in note 19, *supra*, the law presumes a release to be a satisfaction unless the plaintiff can prove otherwise. Ellis v. Essau, 50 Wis. 138, 6 N.W. 518, 520 (1880). Here the amount paid by Alaska Amusements, Inc., for the gunshot wound is uncertain. Under the analogy, this amount is analogous to the sum paid for the release. In showing the release not to be a satisfaction, the plaintiff must prove both the extent of her damages (i. e. what amount would be a satisfaction) and the value of the release. Only if both figures are before the trier of fact can the two be compared to determine that the release does not amount to a satisfaction.