Henry G. STORRS, Appellant,

v.

LUTHERAN HOSPITALS AND HOMES SOCIETY OF AMERICA, INC., d/b/a Fairbanks Memorial Hospital, Appellee.

No. 6345.

Supreme Court of Alaska.

April 1, 1983.

A. Lee Petersen, Anchorage, for appellant.

Jennings, Strouss & Salmon, Inc., Phoenix, and David H. Call, Call, DeWitt, Barrett & Burbank, Fairbanks, for appellee.

Before BURKE, C.J., and RABINOWITZ, MATTHEWS and COMPTON, JJ.

## OPINION

MATTHEWS, Justice.

In our prior decision in this matter, *Storrs v. Lutheran Hospitals and Homes Society of America, Inc.*, 609 P.2d 24 (Alaska 1980), we held that the appellee had not applied the by-law standard of "proven gross negli-

gence" in suspending appellant's hospital privileges. We remanded for application of this standard. The Judicial Review Committee (JRC) of the appellee decided that the suspension of Dr. Storrs was justified, based on his handling of a liver biopsy. The JRC determined that Dr. Storrs' handling of that procedure constituted "proven gross negligence." This decision was made on the evidence previously submitted. Dr. Storrs appealed to the Appellate Review Committee of appellee and, upon rejection of his appeal there, to the superior court, which affirmed the suspension.

Dr. Storrs' first contention is that the JRC used an incorrect definition of gross negligence. The definition the JRC adopted is as follows:

> In performing professional services for a patient a physician or surgeon has the duty to have that degree of learning and skill ordinarily possessed by reasonable physicians and surgeons practicing in the same or a similar locality and under similar circumstances.
>
> It is his further duty to use the care and skill ordinarily exercised in like cases by reasonable members of his profession practicing in the same or a similar locality under similar circumstances, and to use reasonable diligence and his best judgment in the exercise of his skill and the application of his learning, in an effort to accomplish the purpose for which he is employed.
>
> A failure to perform any such duty is negligence.
>
> Gross negligence requires a choice of a course of action either with knowledge of

serious danger to patients involved in it or with knowledge of facts which would disclose this danger to any reasonable physician. Gross negligence involves a risk substantially greater in amount than that which is necessary to make conduct negligent.

> "Proven gross negligence" is gross negligence proven by a preponderance of the evidence. By a preponderance of the evidence is meant such evidence as when weighed by that opposed to it has more convincing force and the greater probability of truth.

■ In our view this definition was satisfactory. It clearly conveyed the idea that a major departure from the standard of care was required. *See* W. Prosser, Torts 182–84 (4th ed. 1971). In fact, since the definition requires a choice of a course of action either with knowledge of serious danger or with knowledge of facts which would disclose this danger the definition meets the stricter standard of recklessness. *See* Restatement (Second) of Torts § 500 (1966), especially comment g.[1]

■ Dr. Storrs' second point is that the record does not contain substantial evidence of gross negligence. The Judicial Review Committee found that gross negligence existed with respect to the liver biopsy "as manifested by failure to recognize promptly a life threatening condition (hemorrhagic shock), failure to institute basic, appropriate, and timely treatment and failure to assume responsibility to expedite treatment of shock." These conclusions were amply and explicitly supported by testimony.

1. The reason for this may be that in *Leavitt v. Gillaspie,* 443 P.2d 61 (Alaska 1968), we equated, without discussion, gross negligence with "willful, wanton or reckless misconduct." This is not standard usage. "[M]ost courts consider that 'gross negligence' falls short of a reckless disregard of consequences, and differs from ordinary negligence only in degree, and not in kind. There is, in short, no generally accepted meaning; but the probability is, when the phrase is used, that it signifies more than ordinary inadvertence or inattention, but less than conscious indifference to consequences; and that it is, in other words, merely an extreme departure from the ordinary standard of care."

W. Prosser, Torts, 183–84 (4th ed. 1971). In *Leavitt* the issue was whether an instruction that contributory negligence was not a defense to aggravated conduct on the part of the defendant should have been given. When contributory negligence was the rule, a defendant's gross negligence, as that term is commonly understood, did not negate the defense of contributory negligence, while willful, wanton or reckless conduct did. Prosser, *supra,* at 426. Thus, in context the court in *Leavitt* did not err in defining gross negligence in recklessness terms. However, that does not mean that the two concepts are identical for, in theory at least, they are not.

Dr. Storrs next argues that it is unreasonable, arbitrary and capricious to revoke hospital privileges on the basis of merely one case. We disagree. A hospital's duty to the public it serves may well justify it in terminating the privileges of a physician who has been grossly negligent on one occasion. This may be especially appropriate where, as here, the physician's gross negligence was committed in connection with the treatment of a common condition. In *Suckle v. Madison General Hospital,* 362 F.Supp. 1196, 1214 (W.D.Wis.1973), *aff'd,* 499 F.2d 1364 (7th Cir.1974), the court noted that a "single case in which a physician performs badly may be a constitutionally adequate basis for non-renewal of staff membership." If a hospital does not revoke staff privileges, or take some similar action, after a case of proven gross negligence it risks exposing itself to liability for similar future episodes. *Purcell v. Zimbleman,* 18 Ariz.App. 75, 500 P.2d 335 (Ariz.App.1972); *Ferguson v. Gonyaw,* 64 Mich.App. 685, 236 N.W.2d 543, 550 (Mich.App.1975); *Bost v. Riley,* 44 N.C.App. 638, 262 S.E.2d 391 (N.C. App.1980), petition denied, 300 N.C. 194, 269 S.E.2d 621 (N.C.1980); *Johnson v. Misericordia Community Hospital,* 99 Wis.2d 708, 301 N.W.2d 156 (Wis.1981).

Dr. Storrs' last contention is that the refusal of the JRC to reopen the record for new evidence violated his right to procedural due process. In our prior order of remand we held that the JRC "may base its decision on the evidence previously submitted or, in its discretion may reopen the proceedings for new evidence." The JRC did not abuse its discretion in refusing to reopen the proceedings. Dr. Storrs himself requested that the evidentiary hearing be held on a expedited basis. There is no suggestion in the record that Dr. Storrs believed that the evidentiary hearing would be a preliminary one and that additional evidence could be presented later. Further, Dr. Storrs was not precluded from presenting evidence favorable to his case at that hearing.

AFFIRMED.

CONNOR, J., not participating.