**Jacque BUNTING, as Personal Representative of the Estate of Harold Dierich, Plaintiff–Appellant,**

**v.**

**UNITED STATES of America, Defendant–Appellee.**

No. 88–3672.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 4, 1988.

Decided May 22, 1989.

As Amended on Denial of Rehearing and Rehearing En Banc Sept. 22, 1989.

**1144**

Lewis Gordon, Baily & Mason, Anchorage, Alaska, for plaintiff-appellant.

Michael R. Spaan, U.S. Atty., Lt. Cmdr. Ronald L. Nelson, Sp. Asst. U.S. Atty., and Mark A. Rosenbaum, Asst. U.S. Atty., Anchorage, Alaska, for defendant-appellee.

Before NELSON, BOOCHEVER and BRUNETTI, Circuit Judges.

NELSON, Circuit Judge:

Jacque Bunting, as personal representative of the Estate of Harold Dierich, appeals from a judgment for the defendant, United States of America, in a wrongful death and medical malpractice action filed under the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq.* (the "FTCA"). The estate makes three arguments: (1) that the district court erred in concluding that Alaska's Good Samaritan statute, A.S. 09.65.-090, shields the United States from liability due to negligence; (2) that the district court erred in concluding that the care provided by Dr. Garrett Duckworth, the Coast Guard physician who treated Harold Dierich, was not grossly negligent; (3) that the district court erred in failing to conclude that Dr. Garrett Duckworth's acts and omissions were a proximate cause of the death of Harold Dierich. We affirm the judgment of the district court.

BACKGROUND

On July 21, 1984, Harold Dierich was piloting an airplane on a commercial flight. He departed Kodiak State Airport at approximately 9:00 a.m. and crashed in the waters of the Ouzinski Narrows a few minutes later. He was spotted in the 40° waters by a private fishing craft. At about 10:30 a.m., the fishing craft's radio messages were intercepted by a Coast Guard helicopter on a training exercise under the command of Lieutenant Commander John Harper. Under extremely poor conditions Commander Harper, with the assistance of the fishing vessel crew, completed a rescue of Dierich within fifteen minutes.

Having been pulled from the narrows, Dierich was brought to the Coast Guard dispensary on Kodiak Island and was placed under the care of Dr. Garrett Duckworth. The crash and the more than one hour of exposure to the frigid air and water had taken their toll on Dierich. Upon arrival at the clinic, Dierich was in an unstable condition. He was profoundly hypothermic (low body temperature). He also had hypotension (low blood pressure), a probable pneumothorax (a punctured lung), and chest injuries.

Duckworth judged that the hypothermia was the major life-threatening problem for Dierich and focused his treatment on that problem rather than on the others. Dierich was under Duckworth's care for about ninety minutes. Then Dierich was transferred to the Kodiak Island Hospital (KIH) at 12:42 p.m. The staff at KIH performed a chest x-ray, discovered a pneumothorax, and inserted a chest tube. At 4:30 p.m., he was declared dead after life-support measures were discontinued upon instructions from a member of his family.

Dierich's estate brought an action against the United States under the FTCA.[1] The statute reads in relevant part:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not

---

1. The alleged torts took place on land. This suit is unlike many involving the Coast Guard because no maritime tort was alleged. Therefore, neither the suits under the Admiralty Act, 46 U.S.C. § 741 *et seq.* nor the federal common law of maritime torts apply. *See Patentas v. United States,* 687 F.2d 707, 713 (3d Cir.1982).

be liable for interest prior to judgment or for punitive damages.

28 U.S.C. § 2674.

The United States moved for summary judgment on the ground that under Alaska's Good Samaritan statute, A.S. 09.65.-090, the Coast Guard, which must be viewed as a private person under the FTCA, was entitled to immunity for alleged negligence. In *Bunting v. United States*, 662 F.Supp. 971 (1987), the United States District Court for the District of Alaska held that the Coast Guard was under no pre-existing duty to undertake the rescue at issue in this case. Therefore, the Coast Guard could not be held liable for negligence under Alaska law but only for gross negligence, recklessness, or intentional misconduct. On January 9, 1987, the plaintiff amended the complaint and added allegations of gross negligence. The case proceeded to trial on the allegations of gross negligence. The district court entered judgment that plaintiff take nothing by the action and that defendant was to recover its costs. This appeal followed. This court has jurisdiction under 28 U.S.C. § 1291.

DISCUSSION

■ The interpretation of a statute is a question of law subject to *de novo* review. *Southeast Alaska Conservation Council, Inc. v. Watson*, 697 F.2d 1305, 1309 (9th Cir.1983). The determination of the standard of care to be utilized in evaluating a negligence claim is a legal question which also is reviewed *de novo*. *Miller v. United States*, 587 F.2d 991, 994–95 (9th Cir.1978). The determination of negligence, however, is generally recognized as a mixed question of law and fact governed by the clearly erroneous standard. *Hollinger v. United States*, 651 F.2d 636, 639 (9th Cir.1981). A finding of proximate causation also is subject to the clearly erroneous standard of review. *Felder v. United States*, 543 F.2d 657, 664 (9th Cir.1976).

I. THE GOOD SAMARITAN STATUTE ISSUE

■ The United States is liable for claims brought under the FTCA to the extent that a private individual would be un-

der the circumstances. 28 U.S.C. § 2674 (1982). The alleged wrongdoing of Dr. Garrett Duckworth, a Coast Guard physician, took place in Alaska in conjunction with his rendering of medical services at the Coast Guard Clinic at Kodiak. Assuming for the moment that the Coast Guard was not under a pre-existing duty to rescue, Duckworth's liability is the same as that of a private physician who rendered the same emergency services in any clinic in Alaska. The Coast Guard is responsible for Duckworth's liability under the doctrine of respondeat superior. Therefore we examine Alaska law to learn the rights, duties, and liabilities associated with Duckworth's behavior. *See Molsbergen v. United States*, 757 F.2d 1016, 1020 (9th Cir.), *cert. denied*, 473 U.S. 934, 106 S.Ct. 30, 87 L.Ed.2d 706 (1985) (holding that law of the state where the act or omission occurs determines whether an actionable duty exists under the FTCA).

■ The Alaska Good Samaritan statute eliminates civil liability for emergency aid unless damages are the result of gross negligence, recklessness, or intentional misconduct. Appellant disagrees with the district court's conclusion that Duckworth's actions fall within the protection afforded by the statute. Appellant's argument rests heavily upon the Alaska Supreme Court's decision in *Lee v. State*, 490 P.2d 1206 (Alaska 1971), *rev'd on other grounds*, *Munroe v. City Council*, 545 P.2d 165, 170 n. 11 (Alaska 1976).

In *Lee*, an Alaska state trooper, Officer Frank Johnson, rescued a twelve-year-old girl who had been grabbed by a lioness at an amusement park. The trooper shot the animal in order to secure the quick release of the child. Subsequently the trooper's gun discharged again and wounded the twelve-year-old in the leg. The court held that the trooper did not have the protection of the Good Samaritan statute because he was under a duty to rescue the child.

The appellant argues that the Coast Guard is analogous to the Alaska State Police because both are under a duty to rescue individuals in emergency situations. This argument implies that Duckworth's

actions are analogous to the state trooper's. Therefore, Duckworth and the Coast Guard do not have the protection of the statute. The appellant's reliance upon *Lee* is misplaced.

*Lee* does not control the case now before us because *Lee* does not interpret the statute now before us. Neither appellee's nor appellant's brief recognizes that A.S. 09.-65.090 has been amended since 1971 when *Lee* was decided. As the *Lee* court stated, "A.S. 09.65.090" reads as follows:

> (a) A person, who, without expecting compensation, renders care to an injured or sick person, who appears to be in immediate need of aid is not liable for civil damages as a result of an act to or omission in rendering emergency care, or as a result of an act or failure to act to provide or arrange for further medical treatment or care for the injured person.
> (b) This section shall not preclude liability for civil damages as a result of gross negligence or intentional misconduct. Gross negligence means reckless, willful, or wanton misconduct.

*Lee*, 490 P.2d at 1208.

The amended A.S. 09.65.090 in effect when this cause of action arose reads:

> Civil Liability For Emergency Aid
> (a) A person at a hospital or any other location who renders emergency care or emergency counseling to an injured, ill, or emotionally distraught person who reasonably appears to the person rendering the aid to be in immediate need of emergency aid in order to avoid serious harm or death is not liable for civil damages as a result of an act or omission in rendering emergency aid.
> (b) This section does not preclude liability for civil damages as a result of gross negligence or reckless or intentional misconduct.

The amended statute's principal difference is the description of the actor who qualifies for reduced civil liability. The former statute identifies the qualifying actor as "a person who, without expecting compensation, renders care." The present statute identifies the qualifying actor as "a person at a hospital or any other location, who renders emergency care." This change demonstrates that the legislature intended to broaden the former statute to include those who received compensation for emergency care rendered at hospitals. Duckworth is clearly within that class.

The statute's broader protection from civil liability not only encourages individual rescues but also encourages organizations to establish and to maintain emergency medical facilities. We recognize that many areas have experienced the closing of hospital emergency rooms due to high malpractice insurance rates and that the Alaska legislature has expressed a desire to address this problem in other legislation dealing with medical malpractice liability. *See Priest v. Lindig*, 583 P.2d 173, 175–76 n. 7 (Alaska 1978). Moreover, in the seventeen years since *Lee* was decided, the case has been cited almost exclusively for the proposition that the police have a duty to rescue. *See, e.g., Deal v. State*, 626 P.2d 1073, 1080 (Alaska 1980). No published opinion of an Alaska court has applied *Lee* to deny the protection of A.S. 09.65.090 to any physician or provider of emergency room services. We see no reason to extend *Lee* past its use by the Alaska courts. We conclude that Alaska law makes available the protection of A.S. 09.65.090 to individuals and organizations that provide emergency room medical services.

Despite the change in the statute, appellant argues that the Coast Guard had a pre-existing duty to Dierich that places it beyond the protection of A.S. 09.65.090. Even if we assume that the Alaska Supreme Court would extend *Lee* to exclude from the protection of the statute one who provides emergency services at a hospital under a pre-existing duty, the Coast Guard was under no such duty. We find the statutory authority of the Coast Guard in 14 U.S.C. §§ 1 *et seq.* One of the primary duties of the Coast Guard is to operate rescue facilities. 14 U.S.C. § 2. The Coast Guard also is authorized to perform any and all acts necessary to render aid to distressed persons "on and under the high seas and on and under the waters over which the United States has jurisdiction."

14 U.S.C. § 88. However, these statutes do not impose a duty to rescue. *Frank v. United States*, 250 F.2d 178, 180 (3rd Cir. 1957), *cert. denied* 356 U.S. 962, 78 S.Ct. 1000, 2 L.Ed.2d 1069 (1958).

Admittedly, once the Coast Guard begins a rescue, it must use reasonable care in carrying it out. *See United States v. De-Vane*, 306 F.2d 182 (5th Cir.1962). However, the fact that the Coast Guard may voluntarily undertake a rescue and subject itself to liability does not imply that the Coast Guard has a pre-existing duty to undertake the rescue. In the absence of such a pre-existing duty, *Lee* holds that a rescuer is entitled to the protection of the Good Samaritan statute. *Lee*, 490 P.2d at 1209 n. 7. The appellant's reliance on other Alaska cases, *i.e.*, *Adams v. State of Alaska*, 555 P.2d 235 (Alaska 1976), and *City of Kotzebue v. McLean*, 702 P.2d 1309 (Alaska 1985), is misplaced. Those cases concern the issue whether a government agency had conducted a rescue negligently, not whether the agency had a pre-existing duty to conduct the rescue. Appellant's reliance on the California case of *Colby v. Schwartz*, 78 Cal.App.3d 885, 144 Cal.Rptr. 624 (1978), is also misplaced. California's Good Samaritan statute is narrower than Alaska's. Its language refers only to licensed medical personnel who provide care at the scene of an emergency. The California courts have incorporated the statutory language "the scene of an emergency" to include a hospital emergency room in some situations. *See, e.g.*, *McKenna v. Cedars of Lebanon Hospital*, 93 Cal.App.3d 282, 155 Cal.Rptr. 631 (1979).

Therefore, we conclude that Alaska law places Duckworth within the protection of A.S. 09.65.090. We also conclude that the Coast Guard is not subject to a pre-existing duty to rescue and is thus protected by Alaska's Good Samaritan statute.[2]

2. We observe that Alaska decisional law may expose some of Alaska's government agencies to greater liability than the liability faced by private individuals. We also observe that the language of the FTCA exposes the United States only to the same liability as that faced by a "private individual." However, we do not reach the issue whether the FTCA subjects the United States government to state laws that impose greater liability on some government agencies than on private individuals.

## II. THE GROSS NEGLIGENCE ISSUE

The district court held that Duckworth was not grossly negligent in the care that he provided to Dierich. Under Alaska law, gross negligence in the medical setting is an extreme departure from the ordinary standard of care. "Gross negligence requires a choice of a course of action either with knowledge of serious danger to patients involved in it or with knowledge of facts which would disclose this danger to any reasonable physician. Gross negligence involves a risk substantially greater in amount than that which is necessary to make conduct negligent." *Storrs v. Lutheran Hospital and Homes Society of America*, 661 P.2d 632, 634 (Alaska 1983). In defining gross negligence, Alaska courts rely upon the Restatement (Second) of Torts § 500 comment *g* at 590 (1965): " 'It [gross negligence] differs from that form of negligence which consists of mere inadvertence, incompetence, unskillfulness, or a failure to take precautions to enable the actor adequately to cope with a possible or probable future emergency....' " *Leavitt v. Gillaspie*, 443 P.2d 61, 65 (Alaska 1968) (quoting Restatement). "In order for one to be guilty of gross negligence, the evidence must show that he had full knowledge of the hazards that he was creating by his actions, such as to evidence a reckless disregard of possible consequences and indifference to the rights of others." *Id.*, (citing *McLemore v. Harris*, 374 P.2d 410, 412 (Alaska 1962)). We review the district court's application of a standard of conduct according to the clearly erroneous standard. *Miller v. United States*, 587 F.2d 991, 994–95 (9th Cir.1978).

We now know that Dierich had three medical problems: hypothermia, hypotension, and pneumothorax. Duckworth treated the hypothermia. Dierich's estate argues that Duckworth inadequately treated the hypotension, and did not treat the pneumothorax. Specifically, the estate alleges

that Duckworth made four omissions in Dierich's treatment. First, Duckworth failed to give Dierich enough intravenous fluid to treat his hypotension properly. Second, Duckworth failed to order x-rays of Dierich in order to diagnose his pneumothorax. Third, Duckworth failed to insert a chest tube into Dierich to diagnose and treat his pneumothorax. Fourth, Duckworth delayed in ordering Dierich's ambulance transportation to the superior facilities at Kodiak Hospital. The estate's expert witnesses testified that the omitted procedures were "straight forward" and did not require an above average degree of skill to implement. Therefore the appellant argues that Duckworth's omissions constituted gross negligence.

However, this evidence does not establish that Duckworth's treatment was grossly negligent. Evidence that a competent physician could have performed the procedures does not establish that a physician, acting in accord with a reasonable standard of care, would have diagnosed those conditions and would have chosen to perform those procedures under the circumstances that Duckworth faced. Furthermore, even evidence that such a physician, acting in accord with a reasonable standard of care, would have performed the procedure, does not establish that Duckworth's treatment was such an extreme departure from this standard of care as to constitute gross negligence. The expert testimony concurred that Duckworth's treatment of Dierich's hypothermia conformed to a reasonable standard of care. Substantial testimony also established that the diagnosis and/or treatment of pneumothorax through insertion of a chest tube could expose a hypothermia patient, such as Dierich, to significant additional risks.[3]

Duckworth believed that the single greatest threat to Mr. Dierich's life was his profound hypothermia, not his hypotension or pneumothorax. Thus the court agreed with Duckworth's initial judgment made upon Dierich's arrival at the clinic. Duckworth's ensuing treatment was congruent with his initial judgment. Since hypotension can be a result of hypothermia, he treated the hypothermia by administering intravenous fluid at a rate of 30 drops per minute. This amount follows the amount prescribed in the State of Alaska Hypothermia and Cold Water Near Drowning Guidelines. The independent treatment for hypotension calls for the administration of a high multiple of that rate. Hindsight shows that Duckworth's initial judgment was erroneous. Had he had knowledge that the hypotension was an independent problem, he should have administered fluid sufficient to treat the hypotension directly. However, he had no such knowledge.

Duckworth's conduct regarding the possible pneumothorax was also congruent with his initial judgment that the profound hypothermia posed the greatest threat to Dierich's life. Duckworth did not insert the chest tube because of his concern that the procedure could induce ventricular fibrillation and death in a severely hypothermic patient such as Dierich. Similarly, Duckworth did not order an x-ray because he was concerned that the patient would lose substantial body heat, aggravating his hypothermia. The district court found that his concerns were reasonable.

The district court also found that a specialist or expert physician, such as those who testified for appellant, could have concluded that the benefits of the diagnosis and treatment of Dierich's pneumothorax would have outweighed the risks. Duckworth, however, is not a specialist. He is a general practitioner in an out-patient clinic for Coast Guard personnel. He had Dierich under his care for less than ninety minutes in an emergency situation. He pursued a conservative course of treatment intended to stabilize the hypothermia and to avoid the risk associated with the more aggressive diagnostic procedures and treatments subsequently advocated by appellant's witnesses.

---

**3.** At oral argument, the attorney for appellant stated that the medical testimony as to the issue of Duckworth's gross negligence was entirely one-sided in appellant's favor. Upon careful and thorough review of the record, we find that this statement was erroneous.

AS 09.55.540 requires the district court to weigh carefully evidence of any emergency circumstances under which a medical malpractice defendant was operating at the time of the alleged malpractice. According to the Alaska House Judiciary Committee Report on Committee Substitute for Senate Bill No. 142 amended, the legislature's concern in enacting this statute was "astronomically high malpractice insurance rates." *See Priest v. Lindig,* 583 P.2d 173, 175–76 n. 7 (Alaska 1978). The district court found that Duckworth had made his decisions in an emergency environment. In this environment, time to explore alternatives was shortened by the urgency necessitated by Dierich's falling body temperature and by the recognition that additional crash victims could arrive who would require allocation of the limited resources of the small clinic. Indeed another victim did arrive during the ninety-minute period. The court concluded that any delay in transporting Dierich to Kodiak Hospital was a function of these serious emergency circumstances.

The district court concluded that Duckworth's decisions were within the range of choices that a general practitioner could have made consistent with exercising the degree of care ordinarily exercised under the circumstances. The district court did not clearly err in finding that Duckworth's conduct under the circumstances was not such "an extreme departure from the ordinary standard of care" as to have satisfied Alaska's definition of gross negligence. *See* W. Prosser, *Torts* 183–84 (4th ed. 1971) *cited in Storrs,* 661 P.2d at 634 n. 1.

### III. THE PROXIMATE CAUSATION ISSUE

The district court did not reach the issue whether Duckworth's conduct was the proximate cause of Dierich's death because it concluded that Duckworth's conduct did not satisfy Alaska law's definition of gross negligence. Because we agree with the district court's decision on the gross negligence issue, we also do not reach the issue of proximate causation.

### CONCLUSION

A.S. 09.65.090 is broad and intended to shield those who dispense emergency medical services from liability due to ordinary negligence. Neither Federal law nor Alaska law imposes a pre-existing duty to rescue on the United States Coast Guard. The district court did not err in finding that Dr. Garrett Duckworth's conduct did not constitute gross negligence under Alaska law. Because the defendants were not liable to the plaintiff, we need not reach the proximate cause issue.

AFFIRMED.