**Donald W. FLYNN, et al.,
Plaintiffs–Appellants,**

v.

**UNITED STATES of America,
Defendant–Third Party
Plaintiff–Appellee,**

v.

**Joyce ROBERTSON, Third Party
Defendant–Appellee.**

No. 88–2213.

United States Court of Appeals,
Tenth Circuit.

May 16, 1990.

Paul W. Mortensen (Robert H. Wilde, Cook & Wilde, P.C., Midvale, Utah, with him on the brief), Moab, Utah, for plaintiffs-appellants.

Dee V. Benson, U.S. Atty. (Brent D. Ward, U.S. Atty. and Joseph W. Anderson, Asst. U.S. Atty., on the brief), Salt Lake City, Utah, for defendant-third party plaintiff-appellee U.S.

Darwin C. Hansen, Hansen & Crist, Bountiful, Utah, for third party defendant-appellee Joyce Robertson.

Before SEYMOUR and BALDOCK, Circuit Judges, and THEIS, District Judge.[*]

THEIS, District Judge.

Plaintiffs appeal from the district court's grant of summary judgment in favor of defendant United States of America and third party defendant Joyce Robertson. 681 F.Supp. 1500. Plaintiffs brought this action against the United States of America pursuant to the Federal Tort Claims Act for the wrongful death of their decedent. R.Vol. I, Doc. 1. The United States filed a third party complaint against, among others, third party defendant Joyce Robertson.

R.Vol. I, Doc. 23. Subsequently, plaintiffs amended their complaint to add a claim of negligence directly against Joyce Robertson. R.Vol. I, Doc. 28.

Summarized from the district court's opinion, the undisputed facts are as follows. In the evening of March 13, 1985, Helga Robertson ("Helga") was driving southbound on Highway 191, a four lane highway, south of Moab, Utah. Helga's sister-in-law, Joyce Robertson ("Joyce"), was a passenger in Helga's vehicle. At approximately 7:50 p.m., Helga's car struck Betty Daniels ("Daniels") while Daniels was walking across Highway 191. Helga's vehicle came to rest on the center lines of the highway. Joyce told Helga to move the car to the side of the road to prevent the car from being struck. Helga moved the car to the side of the road. She and Joyce then returned to the center of the road to assist Daniels. Joyce directed traffic.

Shortly thereafter, plaintiffs' decedent Joan Flynn ("Flynn") arrived at the accident scene. Flynn was driving a van northbound on Highway 191. Flynn stopped her van near Daniels in the outside lane of the highway and turned on the van's emergency flashing lights. Flynn went to the assistance of Daniels, who was near the center line of the highway. Joyce then went to call for help.

Within minutes of this first accident, three National Park Service (NPS) employees were driving southbound on Highway 191 in an NPS truck equipped with emergency lights and siren. The NPS employees were travelling to a training session. The NPS employees came upon the scene of the accident, which is outside the boundaries of the National Park System. The driver, Cornelius, pulled the vehicle over to the shoulder and turned on the emergency lights as the vehicle slowed to a stop. As Cornelius turned on the lights, he activated the siren for a few seconds.

---

[*] The Honorable Frank G. Theis, District Judge, United States District Court for the District of Kansas, sitting by designation.

A few seconds after the NPS vehicle arrived on the scene, a pickup truck driven by Kenneth Partridge swerved into Helga Robertson, Joan Flynn, and Betty Daniels, all three of whom were positioned in the middle of the highway. Partridge was driving in a southbound lane at approximately 52 miles per hour in a 45 miles per hour zone. Partridge testified that he had been following the NPS truck and swerved into the center of the highway when he saw the brake lights of the NPS truck flash on. Partridge testified that he was distracted by the overhead emergency lights on the NPS vehicle.

The district court specifically found that several other factors impaired Partridge's ability to respond to the initial accident. First, the night was dark and the highway was unlighted. Second, Partridge was speeding. Third, he was legally intoxicated. (Partridge subsequently pleaded no contest to two counts of negligent homicide). All three women died—at least two of them, Joan Flynn and Helga Robertson, by the collision caused by Partridge. R.Vol. I, Doc. 127, at pp. 3–6.

Plaintiffs claimed that Joyce Robertson was negligent in causing the first accident, by distracting Helga, and in causing Flynn's death by causing Helga to move the car from the middle of the highway, thus leaving Daniels and the rescuers exposed to danger. Plaintiffs claimed that the NPS employees were negligent in failing to place their vehicle in a position where it would block traffic from striking Daniels and the rescuers, in stopping their vehicle on the side of the road away from the accident, in activating their emergency lights thereby distracting other drivers, in activating their siren and emergency lights thereby distracting the pedestrians, and in having the controls to the emergency lights and siren improperly installed. Plaintiffs also claimed the United States was negligent in failure to train the NPS officers regarding the safe and proper use of emergency equipment and in entrusting the emergency vehicle to the NPS employees. R.Vol. I, Docs. 1, 28, 79.

The district court held that the NPS employees owed no duty to Flynn; that Utah's Good Samaritan Act exonerated them; that the discretionary function exception to the Federal Tort Claims Act barred the claims relating to NPS supervisory personnel for failure to train; and that the Good Samaritan Act immunized Joyce Robertson from liability. R.Vol. I, Doc. 127, at pp. 8–23. The district court denied the plaintiffs' motion for reconsideration. R.Vol. I, Doc. 144. Judgment was entered in favor of the United States and Joyce Robertson. R.Vol. I, Doc. 148. Plaintiffs appeal. We affirm the summary judgment in favor of the United States. Plaintiffs' complaint against Joyce Robertson must be dismissed for lack of subject matter jurisdiction.

We review an order granting or denying summary judgment under the same standard applied by the trial court in determining whether summary judgment is proper. *United States v. Gammache,* 713 F.2d 588, 594 (10th Cir.1983). Summary judgment is proper if the record before the court shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

*A. Liability Under Utah Law*

■ The Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671–2680, makes the United States liable on tort claims under those circumstances in which a private individual would be liable under state law. The court must apply the law of the place where the alleged negligence occurred. *Ewell v. United States,* 776 F.2d 246, 248 (10th Cir.1985). We therefore look to Utah law to determine whether the United States is liable to the plaintiffs.

■ Under Utah law, an essential element of a negligence claim is a duty of reasonable care owed to the plaintiff by the defendant. *Beach v. University of Utah,* 726 P.2d 413, 415 (Utah 1986). Generally, the law does not impose upon a party the affirmative duty to care for another. The law does impose upon a party the affirmative duty to act only when certain special relationships exist. These special relation-

ships generally arise when a party assumes responsibility for another's safety or deprives another of the normal opportunities for self-protection. *Id.* Before the NPS employees may be held liable for negligence, it must be determined that they owed a duty of care to plaintiffs' decedent. The district court held that no duty of care existed and that if a duty arose as a result of their acts in rendering aid, the Utah Good Samaritan Act shielded them from liability.

■ Plaintiffs argue that the NPS employees were subject to certain statutory duties. Plaintiffs quote 16 U.S.C. § 1a–6(b), which they assert gave the NPS employees authority to investigate the accident which in turn gave rise to a corresponding duty to render competent assistance. The statute provides:

> In addition to any other authority conferred by law, the Secretary of the Interior is authorized to designate, pursuant to standards prescribed in regulations by the Secretary, certain officers or employees of the Department of the Interior who shall maintain law and order and protect persons and property within areas of the National Park System. In the performance of such duties, the officers or employees, so designated, may—
>
>> (1) carry firearms and make arrests without warrant for any offense against the United States committed in his presence, or for any felony cognizable under the laws of the United States if he has reasonable grounds to believe that the person to be arrested has committed or is committing such felony, provided such arrest occur within that system or the person to be arrested is fleeing therefrom to avoid arrest;
>>
>> (2) execute any warrant or other process issued by a court or officer of competent jurisdiction for the enforcement of the provisions of any Federal law or regulation issued pursuant to law arising out of an offense committed in that system or, where the person subject to the warrant or process is in that system, in connection with any Federal offense; and

>> (3) conduct investigations of offenses against the United States committed in that system in the absence of investigation thereof by any other Federal law enforcement agency having investigative jurisdiction over the offense committed or with the concurrence of such other agency.

16 U.S.C. § 1a–6(b). Plaintiffs misconstrue the statute. NPS employees have limited law enforcement duties, relating primarily to offenses committed within the National Park System. NPS officers are authorized to make arrests and serve process within the National Park System. *Id.* § 1a–6(b)(1)–(2). They have only limited authority to make arrests outside the National Park System. *Id.* § 1a–6(b)(1). Their investigative authority is not limited by the statute to park property. *Id.* § 1a–6(b)(3); *United States v. Smith,* 713 F.2d 491, 494 (9th Cir.1983). However, their investigative authority is limited to federal offenses occurring within the park system. 16 U.S.C. § 1a–6(b)(3). NPS officers are subject to geographical and other limitations on their law enforcement authority. Their statutory duties do not include the duty to investigate and render assistance at automobile accidents occurring outside of the National Park System.

Plaintiffs argue that all law enforcement officials have an inherent duty to rescue. Plaintiffs rely on *Lee v. State,* 490 P.2d 1206 (Alaska 1971). In *Lee,* an on-duty state police officer was summoned to rescue a girl who was being attacked by a lion at an amusement park. During the course of the rescue, the police officer shot the lion, then accidentally shot the girl. The girl sued the state and the officer for the officer's negligence. The Alaska Supreme Court held that the police officer was under a duty to go to the aid of the plaintiff, arising out of the general responsibility of the police to protect the lives and the welfare of the citizenry. *Id.* at 1209–10. The officer was not protected by the Alaska Good Samaritan Statute, since that statute is directed at persons who are not under a pre-existing duty to rescue. *Id.* We agree with the district court that *Lee* is distinguishable. It is perfectly reasonable to

impose upon general law enforcement officials the duty to rescue. NPS officers are not, however, general law enforcement officials. The NPS officers have no general duty to protect the public outside the confines of the National Park System.

■ Plaintiffs also focus on the fact that some or all of the NPS officers were trained as emergency medical technicians ("EMT's"). According to plaintiff, EMT's have a duty to stop and render assistance. The uncontroverted facts show that the NPS employees did stop, but did not render any emergency medical care at the scene of the first accident. The second, fatal accident occurred before they were able to render medical assistance. Even had they rendered medical assistance, they would be immune under Utah law. Utah Code Ann. § 26–8–11 provides in pertinent part:

> No basic or advance life support personnel who, during training or after certification, or licensed physician or registered nurse who in good faith, provides emergency medical instructions or renders emergency medical care authorized by this chapter shall be liable for civil damages as a result of any acts or omissions, unless found guilty of gross negligence or willful misconduct.

Utah Code Ann. § 26–8–11(2). EMT's are included within the category of "advanced life support personnel." *Id.* § 26–8–2(2).

Plaintiffs next argue that the NPS officers were acting as public officers when they stopped to render assistance. Plaintiffs argue that as public officers, the Park Service employees had the duty to protect the scene of the accident. We have already rejected plaintiffs' argument that NPS officers are general law enforcement officials. Since the officers were outside the confines of the National Park System, where they do have general law enforcement authority, they were necessarily acting as private individuals who were under no duty to stop and render assistance.

■ Plaintiffs assert that the NPS officers' knowing use of improperly installed equipment and their practice of self-protection created a pre-existing duty of care for the safety of plaintiff's decedent. Plain-

tiffs' argument is that the NPS officers had a duty not to be negligent; *i.e.*, they were under the general duty of ordinary care applicable in all matters. This does not translate into a duty to rescue or render assistance.

Plaintiffs argue that by taking command of the situation, the NPS employees prevented the pedestrians from warning approaching vehicles of their presence and from escaping approaching vehicles. Finally, plaintiffs assert a duty not to increase the risk of harm and/or not to cause harm to Flynn. These are not "duties," but are the type of conduct contemplated by the Utah Good Samaritan Act, discussed below.

### B. The Utah Good Samaritan Act

At the time of the accident, the Utah Good Samaritan Act provided:

> A person who renders emergency care at or near the scene of an emergency, gratuitously and in good faith, is not liable for any civil damages as a result of any act or omission by the person rendering the emergency care, unless the person is grossly negligent. As used in this section, "emergency" means an unexpected occurrence involving injury, threat of injury, or illness to a person, including motor vehicle accidents, disasters, and other accidents or events of a similar nature.

Utah Code Ann. § 78–11–22 (Supp.1983). The statute has since been amended to exclude the person who caused the accident from the protection of the statute. The district court held that any negligent acts or omissions by the NPS employees, including failure to block the accident scene and the negligent activation of the siren, did not subject the government to civil liability.

■ Plaintiffs first argue that the conduct of the NPS employees was not gratuitous because of pre-existing duties. We have held that no duties existed. Additionally, "gratuitously" means "without expecting compensation." *See Lee v. State*, 490 P.2d 1206, 1208 (Alaska 1971) (quoting Alaska Stat. § 09.65.090(a)). Plaintiffs have not alleged that the NPS officers ex-

pected compensation for their rescue efforts. Next plaintiffs argue that the NPS officers lacked good faith because they knowingly operated an emergency vehicle with inverted switches for the lights and siren and ignored the safety of pedestrians. If anything, these are allegations of negligence. Good faith is defined generally as honesty of intention and the absence of malice. Black's Law Dictionary 623 (5th ed. 1979). We find nothing in the record to support plaintiffs' argument that the NPS officers lacked good faith.

■ Plaintiffs argue that the NPS employees intended to render medical assistance to Daniels (who was the only injured party at that time). Plaintiffs conclude that since the NPS employees were not rendering assistance to their decedent, they are not protected by the Good Samaritan Act. We reject the plaintiffs' narrow interpretation of the Good Samaritan Act. The statute grants immunity "for *any* civil damages as a result of *any* act or omission by the person rendering the emergency care, ..." Utah Code Ann. § 78–11–22 (emphasis added). The statute covers any acts or omissions by the NPS officers while rendering or attempting to render assistance to Daniels.

■ Plaintiffs next argue that before the NPS officers arrived, no emergency existed. We disagree. When the NPS officers arrived at the scene, an automobile/pedestrian accident had just occurred. The pedestrian, Daniels, was lying injured in the highway. The situation presented by the first accident clearly was an emergency as defined in the Good Samaritan Act.

■ Plaintiffs next assert that the officers caused the "emergency" (the second, fatal accident) by the improper positioning of their vehicle and activation of their lights and siren. The only "emergency" presented when the NPS officers stopped was the first accident. The NPS employees did not cause this initial accident, but were stopping to render aid when the second accident occurred. Any negligence by the officers in stopping to render aid is immunized by the Good Samaritan Act.

## C. Discretionary Function Exception

■ Plaintiffs have alleged that the government was negligent in failing to train its employees to follow the regulations contained in the National Park Service Law Enforcement Policy and Guideline, NPS–9. Plaintiffs allege that Cornelius, the driver of the NPS vehicle, had never been taught to block the scene of an accident with his vehicle, had not been trained on the appropriate use of emergency lights, was not familiar with the placement of the switches, and had not been taught not to use the emergency equipment off park property. Because the alleged negligence occurred prior to the accident and did not arise from the rescue efforts, this conduct does not fall within the coverage of the Good Samaritan Act.

The FTCA contains an exception for

[a]ny claim based upon an act or omission of an employee of the Government, exercising due care, ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). This is commonly known as the "discretionary function exception." Under this exception,

if a government official in performing his statutory duties must act without reliance upon a fixed or readily ascertainable standard, the decision he makes is discretionary and within the exception of the Tort Claims Act.

*Weiss v. United States*, 787 F.2d 518, 523 (10th Cir.1986) (quoting *Barton v. United States*, 609 F.2d 977, 979 (10th Cir.1979)). If a duty is neither mandatory nor clearly specified, it is discretionary. *Id.* The discretionary function exception applies even when the discretionary acts themselves constitute negligence. *Barnson v. United States*, 816 F.2d 549, 553 (10th Cir.), *cert. denied*, 484 U.S. 896, 108 S.Ct. 229, 98 L.Ed.2d 188 (1987).

The relevant NPS regulations provide that an NPS officer may operate an emer-

gency vehicle with the emergency devices activated:

1. At such times, when in the reasonable belief of the operator, an emergency is imminent or exists and the activation of emergency warning devices is necessary in order to protect life or render assistance;

. . . .

6. When necessary while responding to the scene of a fire, accident, or other emergency. Emergency lights shall remain activated at the scene of such incidents when necessary to protect against further injury or property damage.

National Park Service Law Enforcement Policy and Guideline, NPS–9, Chapter 18 (April 1984), Brief of Defendant/Appellee, Exh. 6. There are no fixed standards for the NPS employees to follow; the use of emergency devices is discretionary with the NPS officer in an emergency. The regulations do not mandate any specific training on the proper use of emergency equipment. There being no fixed standards for training or use of emergency vehicles, the conduct of the federal employees falls within the discretionary function of the FTCA.

### D. Plaintiffs' Claims Against Joyce Robertson

■■■ No independent jurisdictional basis is required for a defendant to implead a third party defendant. See 6 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1444, at 321 (2d ed. 1990). The plaintiff may then assert a claim directly against the third party defendant, Fed.R.Civ.P. 14(a); however, there must be an independent basis for federal jurisdiction for any claim the plaintiff asserts against the third party defendant. See *Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978).

Plaintiff Donald W. Flynn is a citizen and resident of the State of Utah. R.Vol. I, Doc. 1, ¶ 4. Third party defendant Joyce Robertson is a citizen and resident of Utah. R.Supp. Vol. II, deposition of Joyce Robertson, at 3. Complete diversity of citizenship is lacking. No other basis for federal jurisdiction is presented. The district court

therefore lacked jurisdiction over plaintiffs' claims directly against third party defendant Joyce Robertson. See *id.*

■■■ A Supreme Court decision from last term also supports our conclusion that the district court lacked subject matter jurisdiction over plaintiffs' claims directly against Joyce Robertson in this FTCA action. The FTCA grants jurisdiction over civil actions on claims "against the United States." *Finley v. United States,* —— U.S. ——, 109 S.Ct. 2003, 2008, 104 L.Ed.2d 593 (1989). The statutory provision " 'against the United States' means against the United States and no one else." *Id.* The FTCA therefore precludes the exercise of pendent-party jurisdiction over related claims against defendants other than the United States. *Id.* 109 S.Ct. at 2010. In the absence of an independent basis for federal jurisdiction, such as diversity of citizenship, the district court lacks jurisdiction over a plaintiff's claims against defendants other than the United States in a FTCA action. Our decision to the contrary in *Stewart v. United States,* 716 F.2d 755, 757–59 (10th Cir.1982), *cert. denied,* 469 U.S. 1018, 105 S.Ct. 432, 83 L.Ed.2d 359 (1984), that the district court has jurisdiction over a nondiverse defendant pendent to a claim against the government under the FTCA, is effectively overruled by *Finley.*

The district court lacked subject matter jurisdiction over plaintiffs' claim against third party defendant Joyce Robertson. Accordingly, the summary judgment must be vacated and plaintiffs' complaint against Joyce Robertson dismissed.

AFFIRMED in part and REMANDED with directions to dismiss plaintiffs' complaint against Joyce Robertson for lack of subject matter jurisdiction.